

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CITY OF JOLIET, an Illinois Municipal Corporation, | ) ) ) | |
| Plaintiff, | ) ) | No.    04 C 3150 |
| v. | ) ) | Judge Robert W. Gettleman |
| SOUTHERN TOWING COMPANY and JEFFREY PAUL OVERSTREET, | ) ) ) | |
| Defendants. | ) | |

| | |
|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, ex rel. ILLINOIS DEPARTMENT OF TRANSPORTATION, | ) ) ) ) |
| Plaintiff-Intervenor, | ) ) |
| v. | ) ) |
| SOUTHERN TOWING COMPANY and JEFFREY PAUL OVERSTREET | ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM OPINION AND ORDER

On May 3, 2004, plaintiff City of Joliet filed a two-count complaint against defendants

Southern Towing Company ("Southern") and Jeffrey Paul Overstreet ("Overstreet") concerning

an allision[1] on May 2, 2003, between a tow barge owned and operated by Southern and driven by

Overstreet at the time of the accident, and the Jefferson Street Bridge ("Bridge"), which spans the

Des Plaines River in Joliet.  Plaintiff's complaint does not identify a statutory basis for its claims,

---

[1]Contact between a moving vessel and a stationary object is often referred to in admiralty
as an "allision."

but asserts federal jurisdiction under 28 U.S.C. § 1333, which applies to admiralty and maritime claims.

Count I asserts a negligence claim against Overstreet, and Count II asserts a negligence claim against Southern. Plaintiff alleges that as a result of the damage to the Bridge caused by the allision, plaintiff incurred additional costs for traffic signal and sign modifications, and for police labor charges for traffic flow enforcement. Plaintiff is seeking damages of $45,153.45.

Defendants moved for summary judgment on both counts pursuant to Fed. R. Civ. P. 56 on June 10, 2005, arguing that plaintiff lacks a proprietary interest in the bridge and thus cannot assert a claim for economic damages under federal maritime law or state law.[2] For the reasons discussed below, defendants' motion for summary judgment is granted.

## FACTS[3]

Plaintiff City of Joliet is a municipal corporation organized and existing under the laws of the State of Illinois. Defendant Southern is Tennessee corporation that operates towboats and barges, and has its principal place of business in Memphis, Tennessee. Defendant Overstreet is an individual residing in Alabama. The Motor Vessel *Laura Elizabeth* is a river towboat that

---

[2]On June 30, 2005, the court granted a motion by the Illinois Department of Transportation ("IDOT") to intervene, and on August 30, 2005, the court granted IDOT's motion to file an amended complaint. IDOT's complaint seeks more than $300,000 in damages resulting from the allision, including damages for "diverting traffic" while the Bridge was not passable. IDOT's intervention does not directly effect the instant motion, although the court notes that both parties appear to agree that plaintiff will be reimbursed by the State of Illinois.

[3]Unless otherwise noted, the following facts, taken from the defendants' L.R. 56.1 statement and attached exhibits, are not in dispute. Plaintiff responded to defendants' L.R. 56.1 statement, but did not file a statement of additional facts.

was owned and operated by Southern on May 2, 2003, when the barge in tow of the *Laura Elizabeth* made contact with the Bridge. At the time of the allision, Overstreet was at the controls. As a result of the allision, the Bridge was closed for approximately five months.

Plaintiff is not the owner of the Bridge, and the allision did not cause any physical damage to any property owned by plaintiff. IDOT is the owner of the Bridge. In July 6, 1995, plaintiff entered into an Agreement for Maintenance of Municipal Streets ("Agreement") with IDOT, which was in effect on May 2, 2003. Under the Agreement, plaintiff is obligated to perform all "routine surface and pothole repairs" and "snow and ice control and all other routine operational services" for certain streets "being used as extensions or parts of State highways lying within the boundaries" of Joliet. Plaintiff was paid annually for its services. The road over the Bridge is covered by the Agreement.

On January 7, 2004, John Mezera, city manager for Joliet, wrote a letter to IDOT stating that the State of Illinois had implemented an emergency detour plan for the closure of the Bridge, and that the State had requested plaintiff's assistance and cooperation. The letter states, "[Plaintiff] agreed to perform the work required for traffic control with the understanding that [plaintiff] would be reimbursed for this expense," and summarizes expenses totaling $45,153.45. The letter also states, "At the IDOT and Coast Guard Public Hearing on this subject, you indicated that you would seek reimbursement for [plaintiff]'s expenses as a part of the IDOT claim to the barge company. I would appreciate it if you would arrange for reimbursement to [plaintiff] as soon as possible." At the time the complaint was filed, IDOT had not reimbursed plaintiff or filed suit against defendants.

3

## SUMMARY JUDGMENT STANDARD

A movant is entitled to summary judgment under Rule 56 when the moving papers and affidavits show there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Unterreiner v. Volkswagen of America, Inc., 8 F.3d 1206, 1209 (7th Cir. 1993). Once a moving party has met its burden, the nonmoving party must go beyond the pleadings and set forth specific facts showing there is a genuine issue for trial. See Fed. R. Civ. P. 56(e); Becker v. Tenenbaum-Hill Associates, Inc., 914 F.2d 107, 110 (7th Cir. 1990). The court considers the record as a whole and draws all reasonable inferences in the light most favorable to the party opposing the motion. See Fisher v. Transco Services-Milwaukee, Inc., 979 F.2d 1239, 1242 (7th Cir. 1992).

## DISCUSSION

The only arguably disputed fact in the instant case is whether the State of Illinois agreed that it would reimburse plaintiff for expenses incurred resulting from the allision and damage to the bridge. Plaintiff asserts that IDOT agreed that it would recoup the costs from Southern and subsequently turn them over to plaintiff, while defendants state only that there was an understanding that plaintiff would be reimbursed by the State. Neither party argues that this disputed fact is material to the putative grounds for summary judgment. The only question, then, is whether the undisputed facts establish that plaintiff has a proprietary interest in the Bridge or is otherwise entitled to recover damages from defendants.

Federal maritime law does not permit recovery for purely economic damages that result

4

from a maritime tort. Complaint of Great Lakes Dredge & Dock Co., 1996 WL 210081, at *6 (N.D. Ill. Apr. 26, 1996) (citing Robins Dry Dock & Repair Co. v. Flint, 275 U.S. 303 (1927)). Since the Supreme Court's seminal decision in Robins, which held that a time charterer of a vessel could not recover economic damages as a result of damage to vessel because it lacked a proprietary interest in the vessel, numerous other courts, including those in the Seventh Circuit, have found that Robins bars economic damage claims of parties without a proprietary interest in the damaged property. See, e.g., Great Lakes, 1996 WL 210081 (dismissing claims by plaintiffs lacking a proprietary interest in property damaged by the "Great Chicago Flood" of April 1992); see also Louisville & Nashville R.R. v. M/V Bayou Lacombe, 597 F.2d 469 (5th Cir. 1979) (claim by railroad for loss of bridge it had contract to use); General Foods Corp. v. United States, 448 F. Supp. 111 (D.Md. 1978) (claims for added cost of transporting goods due to incapacitation of bridge); In re Williamson Leasing Co., 577 F. Supp. 890 (E.D.Mo. 1984) (claims of railroad employees for lost wages due to a collision that caused railroad shutdown).

Under Robins, physical injury to a proprietary interest is a prerequisite to recovery of economic damages in cases of unintentional maritime tort. Reserve Mooring, Inc. v. American Commercial Barge Line, LLC, 251 F.3d 1069, 1072 (5th Cir. 2001). In the instant case, plaintiff argues that even though it does not own the Bridge, its claims are not barred by Robins because it has a "proprietary interest" in the Bridge. Plaintiff, however, does not challenge defendants' statement of the elements required to establish a proprietary interest: (1) actual possession or control of the damaged property; (2) responsibility for repair of the damaged property; and (3) responsibility for maintenance of the damaged property. IMTT-Gretna v. Robert E. Lee SS, 993 F.2d 1193, 1194 (5th Cir. 1993). Plaintiff admits that it is not in possession of the Bridge and

5

does not have any responsibility for its repair. Plaintiff argues that it nonetheless has a proprietary interest in the Bridge because it "provides governmental services to the Bridge and is responsible for traffic regulation and control on roadways within [Joliet], including those providing access to the Bridge," and because under the Agreement it provides "maintenance of municipal streets that includes those locations."

Plaintiff fails to cite any case law in support of its argument that the provision of maintenance services pursuant to a contract creates a proprietary interest in the absence of the other two elements set forth in IMTT: actual ownership or control; and responsibility for repairs. Plaintiff concedes that it does not satisfy either of these elements. Plaintiff also fails to cite any case law in support of its argument that a municipality's provision of law enforcement and other routine services in response to an accident exposes a negligent tortfeasor to liability to the municipality. For example, plaintiff argues without citation that the fact that it had to reroute traffic and adjust traffic signals in the aftermath of the accident demonstrates its proprietary interest in the Bridge. Plaintiff's argument seeks to broaden the definition of ownership and expand the potential liability of tortfeasors well beyond the limits prescribed in Robins, and is unpersuasive. Accordingly, plaintiff has failed to establish that it has a proprietary interest in the Bridge.

Without explaining how such arguments escape the finding that it lacks the necessary proprietary interest, plaintiff attempts unsuccessfully to distinguish the recent decision in In re American Milling Co., 270 F. Supp. 2d 1112 (E.D.Mo. 2003), in which the district court rejected the City of St. Louis's claims for reimbursement for police and ambulance services and lost tax revenue caused by a river accident that damaged the property of third parties. The American

Milling court denied the city's damage claims because, although the city was responsible for the repair and maintenance of the levee and wharf, the allision did not damage any property owned by the city. Id. at 1114. The court also held that "whatever costs are associated with the use of the City's emergency personnel were incurred voluntarily, and again, under Robins Dry Dock and its progeny are not recoverable as pure economic damages lacking any physical damage to property or proprietary interest." Id. To the extent that municipal response services were involved in American Milling, it is substantially similar to the instant case, and plaintiff's claims here fail for many of the same reasons expressed by the Missouri court.[4]

Finally, plaintiff attempts in vain to avoid the preclusive effect of Robins by arguing that the Supreme Court's holding "is really about a pragmatic limitation on the rule of forseeability" in maritime torts, and that the damages to plaintiff caused by the allision were foreseeable. Although plaintiff does not cite to any such cases, some circuits have rejected the notion the Robins creates a bright-line rule, and have occasionally invoked more traditional tort factors such as foreseeability, proximate cause, and remoteness when analyzing damage claims by parties lacking a proprietary interest. See, e.g., Marine Navigation Sulphur Carriers, Inc. v. Lone Star Industries, Inc., 638 F.2d 700 (4th Cir. 1981); Petitions of Kinsman Transit, 388 F.2d 821 (2nd Cir. 1968). The foreseeability or "Kinsman" approach, however, has been soundly rejected by several courts. See, e.g., Louisiana ex rel. Guste v. M/V TESTBANK, 752 F.2d 1019 (5th Cir. 1985 ) (en banc). Plaintiff does not explain why Kinsman should apply to the instant case, and fails entirely

---

[4]Contrary to plaintiff's characterization, the American Milling court's holding was not based solely on the plaintiff's claims for lost tax revenues due to the bridge closure, but also addressed and rejected the plaintiff's claim for damages stemming from the provision of emergency services.

to address courts rejecting <u>Kinsman</u> or recent district court cases from the Seventh Circuit, such as <u>Great Lakes</u>, which have adhered to <u>Robins</u>. <u>Robins</u> therefore bars plaintiff's claims because plaintiff lacks a proprietary interest in the Bridge.

Accordingly, the court grants defendants' motion for summary judgment. Because the court grants defendants' motion under federal maritime law, it need not address defendant's alternative argument that plaintiff's claims are barred under Illinois law.

## CONCLUSION

For the reasons stated herein, defendants' motion for summary judgment is granted. At the status hearing on September 28, 2005, at 9 a.m., the court will set a schedule regarding IDOT's intervening complaint.

ENTER:     September 21, 2005

Robert W. Gettleman
United States District Judge

8